IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT COURT OF OREGON


DEAN GRUDZINSKI, O. KEITH CYRUS,            Civ. No. 07-6195-AA
DAVID OLSON, STOP TAKING OUR
PROPERTY POLITICAL ACTION                   OPINION AND ORDER
COMMITTEE, an Oregon non-profit
political action committee,

       Plaintiffs,

  v.

BILL BRADBURY, et al.,

       Defendants.
_____

Ross A. Day
Oregonians in Action Legal Center
P.O. Box 230637
8255 SW Hunziker Road, #200
Tigard, OR  97223
    Attorney for plaintiffs

Hardy Myers
Attorney General
David E. Leith
Attorney-in-Charge
Special Litigation Unit
Department of Justice
1162 Court Street NE
Salem, OR  97301-4096
    Attorneys for defendant Bill Bradbury


1 - OPINION AND ORDER

Aiken, Judge:

Plaintiffs move for a temporary restraining order and preliminary injunction enjoining the Secretary of State from printing the ballot title, explanatory statement, and fiscal impact statement for Oregon Ballot Measure 49 (Measure 49) in the Voters' Pamphlet or on ballot forms and from certifying the ballot title to each of the 36 counties in Oregon. Plaintiffs maintain that the ballot title and explanatory statement mislead Oregon voters about the effects of Measure 49 and will render the election fundamentally unfair. Further, plaintiffs take issue with the manner in which the Oregon Legislative Assembly drafted and adopted the ballot language for Measure 49.

On September 6, 2007, the court heard oral argument on plaintiffs' motion. For the follow reasons, as well as those stated on the record, plaintiffs fail to show that the ballot language for Measure 49 rises to the level of a constitutional deprivation or that they will suffer irreparable harm if the language is included in the Voters' Pamphlet or on ballot forms. Accordingly, plaintiffs' motion is denied.

## I.  BACKGROUND

This past legislative session, the Oregon Legislative Assembly passed House Bill (H.B.) 3540 and referred it to the voters; it will be presented as Oregon Ballot Measure 49 (Measure 49).

Measure 49 is intended to clarify and supplement Measure 37,

an initiative passed by voters in 2004 and codified at Or. Rev. Stat. § 197.352. Generally, Measure 37 allows property owners to file claims for just compensation if after-acquired land use restrictions lower the fair market value of their property. Or. Rev. Stat. § 197.352(1). In turn, state and local governments may compensate a property owner for the lost market value or "waive" the relevant land use restrictions. Id. § 197.352(8). According to the State, Measure 49 addresses and clarifies several ambiguities in Measure 37 that have led to protracted litigation, such as the transferability of a land use waiver and the acquisition date of property by a surviving spouse. According to plaintiffs, Measure 49 "guts" the provisions of Measure 37.

Subsequent to the passage of H.B. 3540, the Legislative Assembly passed H.B. 2640. H.B. 2640 specifies that Measure 49 will be submitted to the voters through special election on November 6, 2007. H.B. 2640 also adopts specific language for the ballot title and explanatory statement, "notwithstanding" Oregon statutory provisions that govern the adoption of ballot language by the Legislative Assembly and provide for judicial review. See H.B. 2640, §§ 3-5.

H.B. 2640 was signed by the Governor and became effective on July 9, 2007.

On August 6, 2007, plaintiffs filed suit alleging violations of their due process rights. Two weeks later, on August 20, 2007,

3 - OPINION AND ORDER

plaintiffs filed an Amended Complaint alleging violations of their rights to due process, equal protection, and to petition the government for redress of their grievances.

Also on August 20, 2007, plaintiffs filed a motion for temporary restraining order (TRO) seeking the injunctive relief described above.

On September 6, 2007, the case was reassigned to the undersigned judge. The same day, oral argument was heard on the motion.

## II.  DISCUSSION

Plaintiffs claim that H.B. 2640 and the ballot language for Measure 49 violate their rights to substantive due process, procedural due process, and equal protection under the Fourteenth Amendment of the United States Constitution, and their right to petition the government for redress of their grievances under the First Amendment. Accordingly, plaintiffs seek a TRO that prohibits defendants from printing the ballot title, explanatory statement, and financial impact statement for Measure 49 in the Voters' Pamphlets or on any ballot. Defendant Secretary of State Bill Bradbury (the State) opposes the motion on grounds that plaintiffs fail to establish any likelihood of success on the merits of their claims or any measure of irreparable harm if the ballot title and explanatory statement accompany the text of Measure 49.

"A preliminary injunction is not a preliminary adjudication on

4 - OPINION AND ORDER

the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." Textile Unlimited, Inc. v. A..BMH and Co., Inc., 240 F.3d 781, 786 (9th Cir. 2001). Accordingly, a party seeking a TRO or preliminary injunction "must show either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." Big Country Foods v. Bd. of Educ. of Anchorage School Dist., 868 F.2d 1085, 1088 (9th Cir. 1989). While stated as alternatives, "[t]hese formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." Id.

Even if the balance of hardships tips sharply in plaintiffs' favor, however, "it must be shown as an irreducible minimum" that there is a fair chance of success on the merits. Stanley v. Univ. of S. Calif., 13 F.3d 1313, 1319 (9th Cir. 1994) (citation omitted). Further, where the public interest is involved, the court must consider whether the balance of public interests weighs in favor of granting or denying the injunctive relief sought. Westlands Water Dist. v. Natural Res. Def. Council, 43 F.3d 457, 459 (9th Cir. 1994).

Notably, plaintiffs do not seek a preliminary injunction to preserve the status quo. Stanley, 13 F.3d at 1320. Rather,

5 - OPINION AND ORDER

plaintiffs seek a mandatory injunction that would prevent the State from referring to Oregon voters a ballot title and explanatory statement that has been approved by the Oregon Legislative Assembly and submitted to the Secretary of State. In short, plaintiffs seek the extraordinary remedy of interfering with a state's election process. See Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) ("There is no doubt that the right to vote is fundamental, but a federal court cannot lightly interfere with or enjoin a state election."); Soules v. Kauaians for Nukolii Campaign Comm., 849 F.2d 1176, 1182-83 (9th Cir. 1988) ("While we are mindful that federal courts have a duty to ensure that national, state and local elections conform to constitutional standards, we undertake that duty with a clear-eyed and pragmatic sense of the special dangers of excessive judicial interference with the electoral process.").

In any event, "[a] mandatory injunction goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." Stanley, 13 F.3d at 1320 (alteration in original; internal quotation marks and citation omitted). When a mandatory preliminary injunction is requested, the district court should deny such relief "unless the facts and law clearly favor the moving party." Id. (internal quotation marks and citations omitted).
///

6 - OPINION AND ORDER

A. <u>Irreparable Harm</u>

Plaintiffs claim that if the ballot title and explanatory statement is issued, they will suffer irreparable harm because the ballot language is misleading, inaccurate, and biased in favor of Measure 49's passage.

I first note that H.B. 2640 became effective on July 9, 2007, approximately six weeks before plaintiffs sought a TRO or preliminary injunctive relief. I find such delay without justification given the fact that the Secretary of State was required to implement the ballot language by September 6, 2007. The relevant statutory provision, if it were to apply, requires an aggrieved "elector" to challenge insufficient or unfair ballot language within ten days after such language is filed with the Secretary of State. Or. Rev. Stat. § 250.085(1),(3)(b). I find no reason that plaintiffs should not be held to a similar timeline, even though § 250.085 does not apply to Measure 49. H.B. 2640, §§ 3(3), 4(3), 5(3). While I appreciate counsel's efforts to apprise the State of its arguments, under these circumstances, the State raises a valid claim of laches against plaintiffs to preclude injunctive relief. See <u>Oregonians for Accountability v. Bradbury</u>, 2004 WL 1969405, *3 (D. Or. Sept. 2, 2004).

Second, plaintiffs fail to establish that they will suffer irreparable harm. As cogently explained by the State, plaintiffs may counter any alleged harm or misleading language through their

own political speech, including statements opposing Measure 49 in the Voters' Pamphlet. Plaintiffs rely on nothing more than speculation that the ballot title and explanatory statement will mislead the public into voting for Measure 49 or that plaintiffs otherwise will be harmed personally by the ballot language.[1] In contrast, the balance of harms tips in favor of the State and the voting public. Given the lateness of plaintiffs' challenge, the State would not be able to submit new language for Measure 49 before the Voters' Pamphlets are printed, resulting in no explanation or summary.

The fact that plaintiffs allege constitutional claims does not alter this result. Granted, if a case "raises serious [constitutional] questions," it generally "compels a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the movant's] favor." Sammartano v. First Judicial District Court, 303 F.3d 959, 973 (9th Cir. 2002) (citation and quotation marks omitted). For the reasons explained below, I find that plaintiffs fail to show a

---

[1] In fact, given the speculative and generalized nature of the alleged harm, it is highly questionable whether plaintiffs have standing. Individual plaintiffs are Measure 37 claimants who argue that Measure 49 will affect their claims detrimentally. However, plaintiffs will suffer such harm only if Measure 49 passes, and even then, their alleged injuries will depend subsequent interpretations of Measure 49. This is not the particularized and concrete injury that is required for standing. See Fed. Election Comm'n v. Akins, 524 U.S. 11, 23-24 (1998); Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-74 (1992).

8 - OPINION AND ORDER

likelihood that H.B. 2640 or the ballot language for Measure 49 violate plaintiffs' substantive due process, procedural due process, or equal protection rights, or that it imposes a burden on plaintiffs' right to petition the government for redress of their grievances. Therefore, plaintiffs fail to establish the existence of irreparable harm under any standard.

B. <u>Likelihood of Success on the Merits</u>

   1. <u>Substantive Due Process</u>

Several courts, including the Ninth Circuit, have held that "an election is a denial of substantive due process if it is conducted in a manner that is fundamentally unfair." <u>Bennett v. Yoshina</u>, 140 F.3d 1218, 1226 (9th Cir. 1998). Thus, to prevail on their substantive due process claim, plaintiffs must demonstrate that "'the state's choice of ballot language so upset[s] the evenhandedness of the [election] that it work[s] a 'patent and fundamental unfairness' on the voters.'" <u>Caruso v. Yamhill County ex rel. County Comm'r</u>, 422 F.3d 848, 863 (9th Cir. 2005) (quoting <u>Nat'l Audubon Soc'y, Inc. v. Davis</u>, 307 F.3d 835, 858 (9th Cir. 2002) (quoting <u>Burton v. Georgia</u>, 953 F.2d 1266, 1269 (11th Cir. 1992))). For example, such an "exceptional case" would arise if the "ballot language were so misleading as to deceive voters about the subject of the measure at issue." <u>Id.</u> In the absence of such misrepresentation, plaintiffs cannot prevail on their substantive due process claim:

9 - OPINION AND ORDER

> When the ballot language purports to identify the proposed amendment by briefly summarizing its text, then substantive due process is satisfied – and the election is not "patently and fundamentally unfair" – so long as the summary does not so plainly mislead voters about the text of the amendment that "they do not know what they are voting for or against"; that is, they do not know which or what amendment is before them.

Burton, 953 F.2d at 1270. "Therefore, substantive due process requires no more than that the voter not be deceived about what amendment is at issue." Id. at 1269.

Here, plaintiffs challenge the ballot caption, six statements of the summary, and nine statements of the explanatory statement. See Plaintiffs' Memorandum in Support of Application for Temporary Restraining Order, pp. 30-48. However, none are misleading or patently unfair so as to violate plaintiffs' rights to substantive due process.

First, plaintiffs argue that the caption statement that Measure 49 will modify "Measure 37" – as opposed to "Or. Rev. Stat. § 197.352" – is misleading, because "Measure 37" no longer exists. However, this reference is not misleading. Measure 49 modifies the statute commonly known as Measure 37.

Second, plaintiffs challenge the caption and results statements that Measure 49 "protects farmlands, forestlands, groundwater supplies," because Measure 49 permits some development on such lands. Nonetheless, given that Measure 49 generally restricts development on such lands, the word "protect" is not misleading or deceptive. H.B. 3540, §§ 7(1), 11(2) and (3).

10 - OPINION AND ORDER

Next, plaintiffs challenge several statements included in the "Summary" section. Plaintiffs cite as misleading the statement that "landowners" will have the right to build homes as compensation for land use restrictions. Plaintiffs quibble that some Measure 37 claimants will be denied this right if not defined as "owners" under Measure 49. Substantive due process does not require that the ballot summary recite the definition and describe every circumstance under which a claimant is or is not deemed an "owner." Burton, 953 F.2d at 1270. As is, the summary accurately and sufficiently explains that landowners possess such rights under Measure 49.

Plaintiffs also argue that the summary inaccurately states that Measure 49 will allow claimants to build three homes if multiple homes were allowed when the claimants acquired their properties, or up to ten homes if claimants show sufficient reduction in property values. Plaintiffs claim that this statement is misleading, because some landowners may be subject to overlaying land use regulations that "restrict" rather than "prohibit" multiple homes, and Measure 49 does not allow multiple homes unless such use is "prohibited." See H.B. 3540, § 9(5)(f). Again, ballot language cannot be expected to explain every exception, nuance, or contingency of a measure's effect, and plaintiffs' argument is based on speculation as to how courts subsequently may construe the meaning of "prohibit" and "restrict." See Burton, 953 F.2d at 1270

11 - OPINION AND ORDER

("We cannot accept the proposition that substantive due process imposes an affirmative obligation on states to explain - some might say speculate - in ballot language the potential legal effect of proposed amendments to the state constitution."). Moreover, this statement is not misleading or inaccurate. H.B. 3540, §§ 6-9.

Plaintiffs also challenge the summary statement that Measure 49 allows claimants to transfer homebuilding rights to subsequent owners, arguing that not all claimants will be permitted to transfer such rights. The fact that in *some* cases a claimant will not be able to transfer those rights does not render the language inaccurate or misleading when, as a whole, Measure 49 permits the transfer of such rights. H.B. 3540, § 11(6). Moreover, voters can read the text of Measure 49 and determine its effect for themselves. Burton, 953 F.2d at 1269 ("As long as citizens are afforded reasonable opportunity to examine the full text of the proposed amendment, broad-gauged unfairness is avoided if the ballot language identifies for the voter the amendment to be voted upon.").

Plaintiffs also challenge the summary statement that Measure 49 extends rights under Measure 37 to surviving spouses. Plaintiffs argue that Measure 49 actually restricts such rights, because the rights of the surviving spouse are determined by the date the property was acquired by the surviving spouse rather than the date of marriage. However, plaintiffs' argument and supporting

12 - OPINION AND ORDER

hypothetical is speculative and not supported by the language of Measure 49. As explained by the State, the date of acquisition for a claimant who is the surviving spouse of a landowner "is the date the claimant was married to the deceased spouse or the date the spouse acquired the property, whichever is later." H.B. 3540, § 21(2). The plain language of Measure 49 indicates that the "spouse" referred to in the second clause is the deceased spouse rather than the surviving spouse (who is the claimant). Therefore, this statement is not inaccurate.

Plaintiffs also challenge the summary statement that Measure 49 disallows "strip malls, mines other commercial and industrial uses" because the statements does not include other, perhaps more favorable, uses that are likewise prohibited, such as churches, schools, and the like. However, the fact that the ballot language does not include every disallowed use does not render it misleading or patently unfair. Again, voters can read the text of Measure 49 to determine what is and is not allowed.

Plaintiffs assert similar challenges to the first, second, third, fourth, sixth, tenth, eleventh, and fifteenth sentences of the explanatory statement. See Plaintiffs' Memorandum in Support, pp. 36-44. For the reasons provided above, I do not find the explanatory statement misleading on these grounds.

Additionally, plaintiffs challenge the twenty-first sentence of the explanatory statement that Measure 49 requires documentation

13 - OPINION AND ORDER

of reduced values and provides for proportionate compensation when such reductions occur. Plaintiffs argue that the sentence is misleading and inaccurate because it does not describe how reductions in value or compensation are computed. However, Measure 49 provides a formula for compensation, and plaintiffs' argument to the contrary is based on speculation. The omissions noted by plaintiffs (to the extent they exist) do not render the ballot language misleading or confuse voters as to the measure before them. Burton, 953 F.2d at 1269-70.

Indeed, the Ninth Circuit has rejected substantive due process challenges in similar circumstances. See Caruso, 422 F.3d at 863-64; Nat'l Audubon Soc'y, 307 F.3d at 858-59. For example, in Nat'l Audubon Soc'y, the Ninth Circuit affirmed the district court's rejection of a challenge to ballot language that allegedly misled voters by understating the scope of two proposed bans on trapping. 307 F.3d at 858. The district court concluded that an argument favoring passage of the proposition was not "materially misleading," in part because it "was not completely inaccurate." Id. at 858. Although the ballot language allegedly understated the scope of one proposed ban, the court found that it accurately described the narrower one. Id. Further, the Ninth Circuit agreed that materials accompanying the ballot included arguments against the proposed changes, and that under these circumstances, "the ballot material did not rise to the level of a substantive due

14 - OPINION AND ORDER

process violation." Id. at 859.

Likewise, plaintiffs here are free to include opposing statements in the Voters' Pamphlet and assert their interpretation of Measure 49. "Because the [ballot language] could have been interpreted accurately, and because other materials would have enforced this interpretation, we cannot say that including the [challenged language] in the ballot title would have infected the entire election with patent and fundamental unfairness." Caruso, 422 F.3d at 863-64 (internal quotation marks and citation omitted). Accordingly, the fact that the ballot title and explanatory statement may not explain or describe the precise legal effect of Measure 49 under every possible circumstance or exception does not render it misleading or patently unfair.

Finally, plaintiffs suggest that the ballot language for Measure 49 is defective because it fails to comply with the provisions of Or. Rev. Chaps. 250 and 251. In other words, plaintiffs seek to fold Oregon statutory requirements into substantive due process requirements.[2] However, plaintiffs'

---

[2]Notably, Oregon law permits the Legislative Assembly to prepare the ballot title for a measure referred to the voters. Or. Rev. Stat. § 250.075(1) ("When the Legislative Assembly refers a measure to the people, a ballot title for the measure may be prepared by the assembly. The ballot title shall be filed with the Secretary of State when the measure is filed with the Secretary of State."). Regardless, whether the Legislative Assembly can refer ballot language to the voters notwithstanding the provisions of Or. Rev. Chaps. 250 and 251 is a matter of state law.

15 - OPINION AND ORDER

argument is fatally flawed. Their rights to substantive due process do not rest on the State's compliance with state election laws; rather, their rights are violated only if the ballot language is so misleading that the special election is rendered patently and fundamentally unfair. In this case, it is not.

Accordingly, plaintiffs fail to show a substantial likelihood of success on the merits of their substantive due process claim.

### 2. Procedural Due Process and Redress of Grievances

Plaintiffs next argue that H.B. 2640 deprives them the protections of procedural due process, because it side-steps Oregon statutes that permit judicial review of ballot titles and deprives them of the right to file just compensation claims under Measure 37. Similarly, plaintiffs argue that H.B. 2640 violates their First Amendment rights to petition the government for redress of grievances, because the Legislative Assembly "has shielded" the ballot language of Measure 49 from judicial review.

Plaintiffs are correct that Or. Rev. Stat. § 250.085 - the exclusive statutory provision governing challenges to the sufficiency and fairness of ballot titles - does not apply to Measure 49's ballot title. H.B. 2640, § 3(3); See Ecumenical Ministries of Oregon v. Paulus, 298 Or. 62, 66-67, 688 P.2d 1339 (1984) (per curiam). However, H.B. 2640 does not proscribe constitutional challenges, or any challenge for that matter, to the Legislative Assembly's adoption of the ballot language. See Or.

16 - OPINION AND ORDER

Rev. Stat. § 250.044. Presumably, plaintiffs could have filed suit against the State in state court. Indeed, plaintiffs' procedural due process challenge is not premised on the sufficiency or fairness of the ballot title, but rather on the manner in which it was adopted.

Further, plaintiffs do not explain how the language of the *ballot title* for Measure 49 will in any way affect their ability to file a Measure 37 claim. Therefore, I find that plaintiffs do not establish a likelihood of success with respect to their procedural due process or First Amendment claims.

### 3. Equal Protection

Plaintiffs also argue that H.B. 2640 violates their rights to equal protection under the law because the Legislative Assembly treated Measure 49 differently from Measure 37. However, plaintiffs cite no authority in support of this claim. As the State points out, the Equal Protection Clause requires the equal treatment of people, not ballot measures. Plaintiffs identify no provision of H.B. 2640 that purports to treat classes of voters differently or restricts the right of any voter to participate in the special election. See Green v. City of Tucson, 340 F.3d 891, 897 (9th Cir. 2003).

### C. Public Interest

The court also must consider the public interest in deciding whether to grant the injunctive relief sought by plaintiffs.

17 - OPINION AND ORDER

Plaintiffs raise an eleventh-hour challenge to a ballot title and explanatory statement customarily included with ballot measures and request that Measure 49 be submitted to the voters without any title or explanatory statement, undoubtedly causing confusion or questions in the minds of the electorate. Given that plaintiffs are free to include statements opposing the measure in the Voters' Pamphlet, I find that the public interest weighs against the injunctive relief sought by plaintiffs.

## CONCLUSION

Plaintiffs' Motion for Temporary Restraining Order (doc. 9) is DENIED.

IT IS SO ORDERED.

Dated this 12 day of September, 2007.

_____
Ann Aiken
United States District Judge